**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DAVID MABEUS,

                      Petitioner,

    - v -                                        Civ. No. 9:16-CV-1141
                                                                   (GTS/DJS)

JOHN COLVIN, Superintendent, Five Points
Correctional Facility

                      Respondent.

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| DAVID MABEUS<br>04-A-4840<br>Petitioner, *Pro Se*<br>Five Points Correctional Facility<br>Caller Box 119<br>Romulus, New York 14541 | |
| HON. BARBARA UNDERWOOD<br>Attorney General of the State of New York<br>Attorney for Respondent<br>28 Liberty Street<br>New York, New York 10005 | MARGARET A. CIEPRISZ, ESQ. |

**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

*Pro se* Petitioner David Mabeus seeks a Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254, challenging the lawfulness of his incarceration. Petitioner was convicted in 2004 on a plea of guilty to Robbery in the First Degree (NEW YORK PENAL LAW § 160.15(3)) entered in the County Court for the County of Schenectady. *People v. Mabeus*,

68 A.D.3d 1557, 1558 (3d Dep't 2009).

## I. BACKGROUND

### A. Petitioner's Conviction in Schenectady County Court

On August 19, 2003, Petitioner was indicted by a Schenectady County Grand Jury on a charge of Robbery in the First Degree in violation of § 160.15(3) of N.Y. Penal Law ("Penal Law"), Robbery in the Second Degree, in violation of Penal Law § 160.10(2)(b), Burglary in the Second Degree (three counts), in violation of Penal Laws §§ 140.25(1)(c) and 140.25(1)(d), and Grand Larceny in the Fourth Degree (two counts), in violation of Penal Laws §§ 155.30(1) and 155.30(5). Petitioner was arraigned before the county court for the County of Schenectady, New York. Following various pretrial proceedings, Petitioner entered a plea of guilty to Robbery in the First Degree, Penal Law § 160.15(3), and was sentenced on August 9, 2004, to twenty years imprisonment. Dkt. No. 11, State Record ("SR.") at pp. 147-78.

The facts forming the basis for Petitioner's conviction took place between December 2002 and August 2003. During this time period, four armed robberies occurred at McDonald's restaurants in Saratoga County, New York. *People v. Mabeus*, 47 A.D.3d 1073 (3d Dep't 2008). In July 2003, an inmate in the New York prison system informed the police that an inmate in his housing unit, Jeffrey Monroe, had told him that Petitioner, a friend of Monroe's, had committed the four robberies. SR. at p. 127. Upon receipt of this informant testimony, New York State Police submitted an application to a Saratoga County judge for an order authorizing the installation of a GPS tracking device on Petitioner's pickup truck,

and his girlfriend's car. SR. at pp. 125, 131-32. In his affidavit, New York State Police Investigator Brendan Moran independently corroborated this informant information, and detailed his surveillance of the petitioner. SR. at pp. 127-28. The investigator noted in his affidavit that there were two vehicles parked outside of Petitioner's home. SR. at p. 128. On July 25, 2003, Hon. Jerry J. Scarano issued a warrant in which he found probable cause to support the belief that Petitioner's pickup truck had been and was still being used to commit these robberies, and the investigator was given authorization to install a GPS on the truck. SR. at p. 101. On August 9, 2003, a McDonald's restaurant in Schenectady County was robbed. SR. at p. 127. Review of the GPS data revealed that Petitioner's truck had been on scene at the time of the robbery. SR. at p. 102. On August 10, 2003, Petitioner was stopped and taken into custody. SR. at p. 102.

Following his arrest and charge, Petitioner filed an omnibus motion seeking suppression of evidence that was seized as a result of the order and search warrants, or for a *Mapp/Dunaway* hearing. SR. at p. 277. The county court denied this request for a *Mapp/Dunaway* hearing, but agreed to conduct a *Huntley* hearing to assess the police interview, and to hear oral argument on the propriety of the search warrants. *Id.* At the conclusion of this hearing, the court denied Petitioner's motion to suppress evidence that was recovered from Petitioner's vehicle, and statements made to the police at the time of detention. *Id.* At the *Huntley* hearing, the court found that the search warrants were validly obtained and supported by probable cause, and that there was probable cause for Petitioner's arrest when he was stopped in his driveway on August 10, 2003. *Id.*

## B. Direct Appeal

Following his plea of guilty, Petitioner, represented by counsel, filed a brief on direct appeal in the Appellate Division, Third Department. *People v. Mabeus*, 47 A.D.3d 1073, 1074 (3d Dep't 2008). Petitioner's appeal contended that (1) the county court erred in denying a *Mapp/Dunaway* hearing, (2) the county court failed to find any facts in support of the denial of the *Mapp/Dunaway* hearing, (3) at the *Huntley* hearing the county did not establish that the police had probable cause to arrest Petitioner on August 10, 2003, and (4) the search warrants were defective because the police based the warrant applications on unreliable informant information. SR. at p. 278. The Appellate Division found that Petitioner had stated sufficient factual allegations in support of his appeal for a *Mapp/Dunaway* hearing. SR. at p. 279. The Appellate Division held Petitioner's appeal in abeyance pending the completion of a *Mapp/Dunaway* hearing by the county court, so that the record could be further developed regarding the circumstances surrounding the applications for the sealed order and search warrants, as well as the manner in which evidence obtained from the Petitioner's vehicle was recovered. *Id.*

Despite being directed by the Appellate Division to conduct a suppression hearing, the county court determined on remittal that a *Mapp/Dunaway* hearing was not necessary. SR. at p. 280. The county court found that the propriety of the search warrant could be determined by looking at the four corners of the warrant and supporting documentation. *Id.* at p. 281. The county court found that the informant testimony that served as the basis of probable cause for the search warrant was sufficiently and independently verified by police.

*Id.* However, the county court found that there were insufficient facts surrounding the manner and circumstances of the installation of the GPS tracking device. SR. at pp. 282-83. Petitioner subsequently moved to suppress certain evidence. SR. at p. 340. Thereafter, the county court ordered a suppression hearing to develop facts regarding the search warrant and supporting documentation, the manner and circumstances surrounding the installation of the GPS tracking device, and the circumstances surrounding the seizure of an axe, black ski mask, and bundled currency from Petitioner's truck. SR. at p. 283. At this time, the county court concluded that there was still an insufficient basis for a *Mapp/Dunaway* hearing. Instead, the county court conducted a *Franks* hearing and heard testimony from the police investigator regarding information contained in the search warrant. Following this hearing, the Judicial Hearing Officer found that the search warrant was supported by probable cause and recommended that Petitioner's suppression motion be denied. *People v. Mabeus*, 63 A.D.3d 1447, 1448 (3d Dep't 2009).

Following the suppression hearing, the Appellate Division again heard Petitioner's argument, brought by appellate counsel, that the GPS search warrant application was defective. Petitioner asserted that the warrant was defective because the information supplied by the confidential informant did not satisfy the *Aguiliar-Spinelli* test, which is used by courts to evaluate hearsay information from confidential informants. SR. at p. 302. *People v. Johnson*, 66 N.Y.2d 398, 402 (2d Cir. 1985). The *Aguilar-Spinelli* test is a two-pronged inquiry that examines "(i) the veracity or reliability of the course of the information, and (ii) the basis of the informant's knowledge." *United State v. Rowell*, 903 F.2d 899, 903 (2d Cir.

1990) (quoting *People v. Griminger*, 71 N.Y.2d 635, 639 (1988)).  The Appellate Court found that the two-pronged test was satisfied because the informant signed a handwritten deposition under oath, and the contents of his statement were corroborated through an independent police investigation.  SR. at p. 344.  The Appellate Division held that because the *Aguiliar-Spinelli* test was satisfied, the search warrant authorizing the placement of the GPS tracking device on the vehicle was valid.  SR. at p. 346.  However, the Appellate Division held that the record was devoid of information regarding the circumstances surrounding Petitioner's initial detention and the manner in which the axe and ski mask were seized from his truck, and the court ordered the matter to once again be remitted to the county court for a *Mapp/Dunaway* hearing.  *People v. Mabeus*, 63 A.D.3d at 1453.

At the *Mapp/Dunway* hearing, Petitioner's counsel raised the argument that he was under arrest from the moment the State Troopers, with weapons drawn, detained Petitioner in his driveway.  SR. at p. 518.  Petitioner contended that there existed no probable cause at that time to arrest him, and that any statements made to police, and evidence collected following this detention, should be suppressed as fruit of the poisonous tree.  *Id.*  The Appellate Division examined the findings of the suppression hearing and found that police testimony at the *Mapp/Dunaway* hearing established that the police knew that an armed robbery had occurred at a McDonald's restaurant nearby, that the suspect had committed the crime with a handgun, and police also knew that Petitioner had a prior history of committing such crimes, and that Petitioner owned weapons. SR. at pp. 521-22. The Appellate Division found that the police took reasonable precautions to ensure officer safety and conducted a

lawful investigatory detention on Petitioner. The Appellate Division found that in this point in the detention, an arrest still had not occurred. SR. at p. 522. An arrest did occur when the police retrieved the GPS device from Petitioner's truck and verified that the truck had been in close proximity of the McDonald's restaurant at the time of the robbery. Therefore, the Appellate Division found that the Petitioner's arrest was based on probable cause provided by the GPS information. SR. at p. 523. Petitioner's counsel sought to appeal this decision to the Court of Appeals, but leave to appeal was denied by Associate Judge Graffeo. SR. at 535.

Following this denial by the Court of Appeals, Petitioner filed two *pro se* motions: a motion to vacate his sentence pursuant to New York Criminal Procedure Law § 440.20, in which Petitioner argued that the county court improperly failed to inquire if the gun that was used in the commission of the robbery was operable; and a motion for a writ of error *coram nobis* to challenge the seizure of items in his truck. Both motions were denied, SR. at p. 538, and an appeal from the CPL § 440.20 denial was also later denied. SR. at p. 551. Petitioner filed a second *pro se coram nobis* motion on October 8, 2015, asserting that appellate counsel was ineffective for failing to argue that the police installation of the GPS device on Petitioner's truck violated CPL § 690.10, arguing that nothing in the GPS warrant application established reasonable cause that the truck had been used in the commission of a crime. SR. at pp. 681-96. The People opposed this motion and argued that Petitioner's contention would have little success because there was a sufficient connection between the robberies and Petitioner's truck. SR. at pp. 829-32. The Appellate Division denied Petitioner's motion on

December 4, 2015. *People v. David Mabeus*, 2015 NY Slip Op 93284(U) (3d Dep't 2015). Petitioner applied *pro se* to the Court of Appeals for leave to appeal for ineffective assistance of counsel. The People opposed this motion and the Court of Appeals denied leave on March 16, 2016. SR. at 909.

### C. Summary of the Petition

The Petition raises only one claim for relief: that appellate counsel was ineffective because he failed to argue that the search warrant was invalid under CPL § 690.10 in that the warrant affidavit never suggested that Petitioner's truck was involved in the commission of a crime. Dkt. No. 1, Habeas Pet., at p. 5.

### II. DISCUSSION

Respondent contends that Petitioner's *habeas* petition should be dismissed, because the Appellate Division appropriately denied Petitioner's claim of ineffective appellate counsel. Dkt. No. 9, Mem. of Law in Opp., at p. 19. Respondent argues that Petitioner's claim is meritless, and that it was proper for the New York State courts to issue a search warrant in this situation, and thus the counsel cannot be found ineffective for failing to challenge this legitimate search warrant. Mem. of Law in Opp. at p. 22. Respondent contends that the counsel was effective according to the *Strickland* test, and that Petitioner's claim is meritless since the search warrant was not unconstitutional. Mem. of Law in Opp. at pp. 20-22.

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-

132, 110 Stat. 1214 (1996) ("AEDPA"), a petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug 28, 2003). According to the AEDPA, an application for a writ of *habeas corpus* regarding the judgment of a State court shall not be granted for a claim that was adjudicated on the merits in a state court proceeding unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 225(d); *see also Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014).

The Second Circuit has explained that under the AEDPA standard of review, the federal court must first identify what the governing federal law is, and whether the law was already established at the time of the state court decision. *Id*. at 134. Clearly established federal law is considered to be Supreme Court holdings; it does not include Supreme Court discussions, or holdings from circuit courts. *Id*. at 134. Once the clearly established federal law on point has been identified, to gain relief under § 2254(d)(1) the petitioner has the burden of showing that (1) the state court decision was contrary to a clearly established Supreme Court principle, or (2) the state court decision involved the unreasonable application of the clearly established principle. *Id.* A state court decision may be contrary to an

established principle when the state court holding reaches an opposite result from that reached by the Supreme Court on facts that are "materially indistinguishable from [the] relevant Supreme Court precedent." *Id.* at 134 (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court unreasonably applies a clearly established law when the court "identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case before it." *Id.* (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). A federal court may grant the *habeas* writ if the state court identifies the correct governing legal principle, but unreasonably applied that principle to the *habeas* petition. *Williams v. Taylor*, 529 U.S. at 413.

### B. Exhaustion

For a petitioner to proceed on a federal *habeas corpus* claim, he must first exhaust available state remedies to ensure that the state is given the opportunity to consider and correct an alleged constitutional violation, *Jackson v. Conway*, 763 F.3d at 133, or show that there is no available state corrective process, or that the remedy would not be effective. 28 U.S.C. § 2254(b)(1); *see also Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001). The exhaustion requirement is intended to maintain the "dual judicial system" and allow for both the federal and state judicial systems to function independently. *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982). To uphold the independence of each judicial system, the state courts must be given the opportunity to consider and correct any violations of any laws. *Id.* "[T]he chief purposes of the exhaustion doctrine would be frustrated if the federal *habeas* court were to rule on a claim whose fundamental legal basis was substantially

different from that asserted in state court." *Glover v. Bennett*, 1998 WL 278272, at \*1 (N.D.N.Y. May 21, 1998) (quoting *Daye v. Attorney Gen. of New York*, 696 F.2d at 192).

In order to meet the requirements of exhaustion, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"; a petitioner can do this by presenting his claim to the highest court in the state. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000). A federal claim must also be "fairly presented" to the state courts to meet the exhaustion requirements. *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). This requires that a prisoner present the essential facts and legal premises of his federal constitutional claim to the highest state court capable of reviewing it. *Jackson v. Conway*, 763 F.3d at 133. Although a state prisoner is not expected to cite the Constitution perfectly in order to satisfy this presentment requirement, the prisoner must assert a claim that is likely to alert the state court about the federal nature of the claim. *Id.* (citing *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)).

Respondent does not dispute that Petitioner has exhausted his claim of ineffective assistance of counsel in the state courts. Petitioner initially raised a claim for ineffective assistance of counsel in his October 15, 2010, motion for a writ of error *coram nobis* in which he argued that defense counsel failed to dispute the seizure of items found in Petitioner's truck. Mem. of Law in Opp. at pp. 17-18. This appeal was denied by the court. *Id.* Petitioner filed a second *pro se coram nobis* motion on October 8, 2015, asserting that his appellate counsel was ineffective for failing to argue that the police did not establish in

the warrant application reasonable cause to link Petitioner's truck to the commission of a crime. *Id.* at p. 18. The Appellate Division denied this motion, and Petitioner applied *pro se* to the Court of Appeals for leave to appeal on the basis that counsel was ineffective. *Id.* at p. 19. The Court of Appeals denied this leave. *Id.* Based on this history, the Court finds that Petitioner "fairly presented" his federal claim to the state court and completed the state's appellate process by appealing the trial and Appellate Courts' denials of his writ of *coram nobis*. Therefore, Petitioner's ineffective assistance of counsel claim is fully exhausted and the Court proceeds to the merits of the claim.

### C. Procedural Default

A procedural default in the state courts will bar federal review for a state prisoner, except in narrow circumstances that are not relevant here. Federal *habeas* review of a state-court conviction is prohibited if the state court rested its judgment on a state procedural requirement that is "independent of the federal question and adequate to support the judgement." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Procedural default occurs when (1) the state prisoner failed to exhaust his state remedies in a manner in which a state court could have barred the claim based on a state procedural rule, or (2) the state court's rejection of a federal claim rests on a state law ground that is both independent of the federal question and adequate to support the judgment. *Jackson v. Conway*, 763 F.3d at 133. In the present case, Petitioner raised his *habeas* claim in his second *pro se coram nobis* motion. SR. at p. 685. Respondent opposes Petitioner's appeal on the merits, and not based on a procedural default.


### D. Ineffective Assistance of Counsel

As seen throughout the extensive appeals history of this case, Petitioner was provided effective assistance of counsel, as his counsel, Frederick Rench, raised numerous arguments that, though well presented, ultimately proved to be unsuccessful. SR. at p. 587.

The "clearly established law" applicable to Petitioner's ineffective assistance of counsel claim is a standard that was developed in *Strickland v. Washington,* 466 U.S. 668 (1984). *Jackson v. Conway*, 763 F.3d at 133. To succeed on a claim for ineffective assistance of counsel, Petitioner must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. at 687. Under the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (quoting *Strickland v. Washington*, 466 U.S. at 687-88). When considering the reasonableness of the counsel's conduct, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. at 689. To establish prejudice under the second prong of *Strickland*, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability" is one that undermines the confidence in the outcome, and for which there is a substantial likelihood of a different result. *Jackson v. Conway*, 763 F.3d at 153 (citing *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)). The New York Court of Appeals has stated that the same standard of meaningful representation should be applied

when assessing the effectiveness of appellate counsel, *People v. Stultz*, 810 N.E.2d 883, 884 (2004), and the Second Circuit has similarly held that a claim of ineffective assistance of appellate counsel can be established by showing that the counsel's representation fell below an objective standard of reasonableness as described in *Strickland. Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010).

The *Strickland* standard is "highly deferential." *Strickland v. Washington*, 466 U.S. at 689. Furthermore, on federal *habeas* review, the court is to make a deferential evaluation of the state court's decisions, and thus a federal *habeas* review of an ineffective assistance to counsel claim is "doubly deferential." *Jackson v. Conway*, 763 F.3d at 153 (quoting *Cullen v. Pinholster*, 563 U.S. at 189). The question is not if the counsel's actions were reasonable, but if any reasonable argument can be made that counsel satisfied their duties under the deferential *Strickland* standard. *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Petitioner asserts that his appellate counsel was ineffective for failing to challenge the search warrant that authorized the placement of a GPS device on Petitioner's vehicle, pursuant to CPL § 690.10. Petitioner contends that the police affidavit never suggested that Petitioner's truck was used in the commission of a crime, and thus the police had not established probable cause sufficient to support a warrant for the GPS tracker on the vehicle. *People v. Mabeus,* 63 A.D.3d at 1447. CPL § 691.10 states that a search warrant may be issued for property upon a finding of "reasonable cause to believe that it. . .[h]as been used . . . to commit . . . an offense." CPL § 690.10(3). The Appellate Division rejected Petitioner's claim on the merits, and found that the warrant did state probable cause that

Petitioner used the vehicle to commit the crimes, because Petitioner's home was a sufficient distance from the McDonald's requiring that Petitioner would use a vehicle to get there and commit a crime; and also found that the informant's testimony was adequately verified by the state police investigators and is therefore credible. *People v. Mabeus,* 63 A.D.3d at 1451-52. Upon review of the record, the Court finds that the Appellate Division's conclusions with respect to Petitioner's claims of ineffective trial counsel were not an unreasonable or improper application of *Strickland*.

To establish his claim that appellate counsel, Frederick Rench, was ineffective, Petitioner must meet the burdens of the *Strickland* test by showing (1) counsel's performance was deficient, and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. at 687. In the present case, Petitioner alleges that counsel's performance was deficient for failing to bring a Fourth Amendment challenge to the placement of a GPS tracker on his vehicle. However, appellate counsel did raise strong Fourth Amendment arguments in three appellate briefs. Mem. of Law in Opp. at p. 26. Appellate counsel brought three separate appeals to the court and numerous motions in an attempt to suppress evidence against his client; which resulted in two remittals by the Third Department. SR. at p. 739. The mere fact that counsel was unsuccessful in his appeals is not grounds for Petitioner to succeed in an argument that (1) his counsel was ineffective and (2) he was prejudiced because of this representation. *Strickland v. Washington*, 466 U.S. at 689.

More specifically, petitioner's counsel repeatedly advocated for his client by continuously challenging the validity of the police stop and seizure of evidence. *People v.*

*Mabeus*, 47 A.D.3d at 1074.  Attorney Rench initially moved to suppress evidence seized as a result of the search order by requesting a *Mapp/Dunaway* hearing, asserting that the search warrant was not supported by probable cause.  *Id.*  Following Petitioner's plea of guilty, Attorney Rench appealed to the Appellate Division, Third Department, alleging that Petitioner was wrongfully denied a *Mapp/Dunaway* hearing, that the search warrant was not supported by probable cause, and that there was no probable cause to arrest Petitioner.  SR. at pp. 587-88.  Petitioner's counsel was successful in this endeavor, and the Appellate Division ordered a *Mapp/Dunaway* hearing, but the county court determined that there was sufficient probable cause for the search based on the search warrant request, and that no *Mapp/Dunaway* hearing would be necessary.  SR. at p. 588.  Following this decision, Petitioner's counsel continued to advocate for Petitioner by again requesting a *Mapp/Dunaway* hearing to suppress the seizure of physical evidence recovered pursuant to the allegedly defective search warrant, as well as the arrest itself.  *People v. Mabeus*, 63 A.D.3d at 1452.  Subsequent to the suppression hearing being conducted, the Appellate Division decided that there was probable cause to support the seizure of evidence, as well as the arrest on August 10, 2003, and that Petitioner's Fourth Amendment rights had not been violated.  *Id.* at 1451.  Like the decision in *Strickland*, this Court finds that the mere fact that appellate counsel was unsuccessful in his appeal does not mean that his representation was ineffective or that Petitioner was prejudiced because of it.

Petitioner contends that appellate counsel was ineffective for failing to challenge the constitutionality of the search order authorizing the installation of the GPS tracking device,

arguing that the search order did not state probable cause to believe that Petitioner's truck was used in the commission of a crime. Habeas Pet. at p. 5. While appellate counsel did not argue this specific point, Attorney Rench did challenge the search order for a lack of probable cause, the validity of the informant testimony, the cause for arrest on August 10th, and the seizure of certain evidence. It is clear to the Court that appellate counsel repeatedly advocated for his client by challenging his arrest over the course of six years. *See People v. Mabeus*, 68 A.D.3d at 1557. Further, appellate counsel is not obligated to bring every nonfrivolous argument possible. *Aparicio v. Artuz*, 269 F.3d at 95. Rather, appellate counsel is only responsible for raising issues that have the greatest potential for success on appeal, *Smith v. Robbins*, 528 U.S. 259, 288 (2000), and the burden lies with a petitioner to show that the counsel omitted a significant and obvious issue in pursuit of a significantly weaker argument. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Here, Petitioner had not met his burden.

Finally, the Court must keep in mind the strong presumption that counsel's conduct fell within the range of what is considered to be a reasonable, professional assistance of counsel. *Strickland v. Washington,* 466 U.S. at 689. Given this level of deference, Petitioner is unable to establish that defense counsel abandoned a significant, obvious legal issue in pursuit of a significantly weaker argument, therefore rendering his assistance ineffective.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED** and **DISMISSED**;

and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2).  Any further request for COA must be addressed to the Court of Appeals (FED. R. APP. P. 22(b)); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[1] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: July 27, 2018
Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[1] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).